**UNION GENERAL DE TRABAJADORES,**
Plaintiff

v.

**TRIPLE–S, INC., Defendant**

**No. CIV 00–1495(JP).**

United States District Court,
D. Puerto Rico.

April 16, 2001.

José E. Carreras Rovira, Hato Rey, PR, for Plaintiff.

Pedro J. Manzano Yates, Fiddler, González & Rodríguez, San Juan, PR, for Defendant.

### *OPINION AND ORDER*

PIERAS, District Judge.

## I. INTRODUCTION

This is an action to set aside an arbitrator's award holding that Plaintiff Unión General de Trabajadores' ("the Union") grievance was procedurally not arbitrable since it was not submitted within five working days from the incident or reason for the grievance pursuant to Article VII, Section 2 of the Collective Bargaining Agreement ("CBA"). By Order dated February 16, 2001, the undersigned, upon the joint request of the parties, converted their respective Initial Scheduling Conference Memoranda into Cross–Motions for Summary Judgment (docket Nos. 8, 9).

Plaintiff originally filed this action against Triple–S, Inc., ("Triple S") in the Court of First Instance, Superior Part of San Juan. Thereafter, Triple S removed the action to this forum pursuant to 28 U.S.C. §§ 1441(a) and 1446, and 29 U.S.C. § 185. On February 8, 2001, Triple S filed a motion for summary judgment alleging that the arbitrator's interpretation of the text of Article VII of the CBA which set forth a time-limit within which to file grievances, as well as his appreciation of the evidence presented to establish the moment upon which the Union was notified of issues giving rise to the grievance in question, squarely fall within the area where the arbitrator deserves extreme deference. In this way, Defendant argues that Plaintiff has failed to establish any reason why this Court should vacate the arbitration award, thereby departing from the strong public policy in favor of settling labor disputes through arbitration. In response, Plaintiff contends that the arbitra-tor erred because the grievance at issue was of a continuous nature, thereby rendering the five working day time-limit in which to file a formal complaint inapplicable. The Court disagrees, and therefore **GRANTS** Defendant's Motion for Summary Judgment.

## II. UNCONTESTED FACTS

The following facts, as set forth in the award order issued by the Honorable Arbitrator José Ramón Colón Burgos are uncontested:

1. On September 4, 1997, Mr. Osvaldo Romero Pizarro, Official of the Union and the delegates of the Union before Triple S, Inc., attended a meeting to discuss certain administrative measures regarding the medical plan of the union members.

2. In a letter dated September 12, 1997, Mr. Romero stated that in the meeting of September 4, the Union delegates were "explained certain changes in the handling of the medical plan of our represented members," and that the alleged changes consisted of establishing a pre-authorization requirement prior to hospitalization and establishing the mandatory use of bio-equivalent medications when the physician did not indicate the contrary.

3. In his letter of September 12, 1997, Osvaldo Romero also stated that the Union understood that the alleged changes consisted in modifications and/or limitations to the benefits of the medical plan coverage. Romero also alleged that the measures notified on September 4, 1997 violated Article XXVI of the Collective Bargaining Agreement and opposed the same.

4. As the first step of the Grievance and Arbitration Procedure, the delegates of the Union before Triple S, Inc., filed their complaints during the

period between September 29, 1997 and October 2, 1997.

5. Triple S, Inc. informed the physicians-surgeons and participating drugstores of the pre-certification requirement and preference in the dispatch of bio-equivalent medications.

6. Pursuant to the notification of Triple S, Inc. to the physicians-surgeons and participating drugstores, the new measures would go into effect on November 1, 1997.

7. Mrs. Mari Fernández testified during the hearing of this case that Triple S, Inc.'s management explained the new pre-certification requirement and preference in the dispatch of bio-equivalent medications during the meeting of September 4, 1997.

8. Between September 4, 1997 and September 12, 1997 six (6) working days passed. If the date of receipt in the Department of Human Resources is taken into consideration, three (3) more days passed. Anyway it is calculated that more than five (5) working days passed between the September 4th meeting—when the Union was notified of the pre-certification requirement and the bio-equivalent medications requirement, and September 12th—the date appearing on the Union letter objecting to the requirements. Said letter was received by Triple S on September 15, 1997.

9. As to the official complaint sheets in the first step which were presented between September 29, 1997 and October 2, 1997, more than 24 days passed from the date on which the delegates learned of the changes.

Upon review of the record, the following fact is also uncontested:

10. The only issue submitted to the arbitrator was: "Determine if the complaints are procedurally arbitrable

pursuant to Article VII of the Collective Bargaining Agreement in the effect between the parties."

## III. LEGAL ANALYSIS

### A. SUMMARY JUDGEMENT STANDARD

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suárez–Cruz,* 172 F.3d 122, 125 (1st. Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Insurance Co. v. Benner,* 980 F.2d 23, 25 (1st Cir.1992).

In a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of

supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Goldman*, 985 F.2d at 1116. In this case, both parties stipulated that there is no issue of material fact, and have therefore submitted the case to this Court for summary judgment adjudication of the arbitration award.

### B.  ARBITRATION REVIEW STANDARD

▆▆▆ Submitting disputes to arbitration avoids delays and frees up court resources. "An agreement that an arbitrator's award be final cuts off further uncertainty as to the rule of the shop, and allows greater efficiency and better planning through a peaceful resolution of labor disputes." *S.D. Warren Co. v. United Paperworkers' Int'l Union, AFL–CIO, Local 1069*, 815 F.2d 178, 182 (1st Cir.1987) (Pieras J., sitting by designation).[1] Moreover, labor disputes that proceed to arbitration are reviewed by individuals who are usually highly familiar with the industry and its practices. For these reasons, once parties agree to have their grievances reviewed by an arbitrator, it is contrary to public labor policy for a court to review the merits of the contract dispute or interfere with the arbitrator's award absent a showing that the award failed to draw its essence from the collective bargaining agreement of the parties. *See Id.* at

181 (citing *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596–97, 80 S.Ct. 1358, 1360–61, 4 L.Ed.2d 1424 (1960)). Once submitted to an arbitrator, courts are not authorized to reconsider the merits of an award even when the award rests on errors of fact or on a misrepresentation of the contract. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987). In fact, so narrow and deferential is the review of arbitral decisions that according to the First Circuit, when the interpretation of a collective bargaining agreement is the issue of a labor arbitration, courts should uphold the arbitrator's interpretation and subsequent award so long as "[the reviewing court] can find, within the four corners of the agreement, any plausible basis for that interpretation." *El Dorado Tech. Servs. v. Union Gen. De Trabajadores de Puerto Rico*, 961 F.2d 317, 319 (1st Cir. 1992) (affirming District Court's upholding of an arbitration award on summary judgment). Moreover, while issues related to the substantive arbitrability of labor disputes are determined by the courts, issues related to procedural arbitrability are decided by the arbitrator. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Such arbitrability decisions are generally immune from review. *See Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1049 (1st Cir.1977).

**1.**  After the First Circuit's opinion in *S.D. Warren Co. v. United Paperworkers' Int'l Union, AFL–CIO, Local 1069*, 815 F.2d 178, 182 (1st Cir.1987), the Supreme Court of the United States decided *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Thereafter, the Court granted certiorari, vacated the First Circuit's judgment in *S.D. Warren*, and then remanded the case to the First Circuit for further consideration in light of *Misco*. Thereafter, in *S.D. Warren Co. v. United Paperworkers' Int'l Union, AFL–CIO, Local 1069*, 845 F.2d 3 (1st Cir.1988), the First Circuit affirmed its ruling in *S.D. Warren Co. v. United Paperworkers' Int'l Union, AFL–CIO, Local 1069*, 815 F.2d 178, 182 (1st Cir.1987), finding that *Misco* did not affect its basic holding.

It is with this standard in mind that the Court now turns to the matter at hand.

## IV. DISCUSSION

It is uncontested that the Union and Triple S are parties, bound by the CBA, which sets forth in great detail the procedures by which employee grievances should be pursued. The provision of the CBA that is pertinent to this case reads as follows:

*ARTICLE VII: Grievance and Arbitration Procedure*

Section 1: During the effectiveness of this Collective Bargaining Agreement, the UNION agrees to submit all complaints, grievances, controversies or claims which arise regarding the interpretation, administration and application of this Collective Bargaining Agreement, to the Grievance and Arbitration Procedure created in this Article.

Section 2: All grievances will be processed pursuant to the following steps:

a. First Step: The Employee, through a Union delegate in the department or office where the affected employee works must, no later than five (5) working days from the incident or reason for the grievance, discuss the same with the Head of the Department who supervises the affected employee. Said Department Head must give his answer in writing to the matter within three (3) working days after having presented it in writing. If both the delegate of the department as well as the substitute delegate are absent from work during said term, the general delegate may substitute them in the presentation of the grievance.

█ It is undisputed that the question of arbitrability was the only issue submitted to the arbitrator. After considering 1) Triple S's argument that the Union's grievance was untimely and thus barred pursuant to the Article VII of the CBA, and 2) the Union's procedural defense that the grievance was of a continuous nature, Arbitrator Colón Burgos concluded that the complaint was not arbitrable. The arbitrator determined that the Union's complaint was not arbitrable because the Union did not submit its grievance to the company within the five working day time-limit as prescribed by the CBA. This conclusion is both reasonable and intelligent, and in accordance with the plain language of the CBA. The arbitrator's decision was well within the scope of his authority and its essence was drawn from the agreement itself. Accordingly, the award shall not be disturbed.

█ Further, the Union's allegation that the grievance was of a continuous nature, thereby rendering the five working day statute of limitations inapplicable has no merit. As the parties stipulated, and as the arbitrator stated, the grievance at issue was the fact that on November 1, 1997, the medical plan would be changed to require that employees 1) use bio-equivalent drugs unless a physician requires otherwise and 2) obtain pre-authorization prior to hospitalization. These changes were to go into effect on a specific date, constitute a one-time occurrence, and therefore were not continuous in nature. When determining whether a violation is continuous in nature, "[t]he proper focus is upon the time of the [aggrieved act], not upon the time at which the consequences of the act become painful". *See Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431, (1980).

## V. CONCLUSION

█ In order to overturn an arbitrator's award, the Union must show that the award is " 'unfounded in reason and fact'[,]

is based on reasoning 'so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling,' or is mistakenly based on a crucial assumption which is 'concededly a non-fact.'" *Trustees of Boston Univ. v. Boston Univ. Chapter, American Assoc. of Univ. Professors,* 746 F.2d 924, 926 (1st Cir.1984) (citations omitted). The arbitrator properly approached the issue presented to him and confined himself to the essence of the CBA. *See Larocque v. R.W.F.,* Inc., 8 F.3d 95 (1st Cir.1993). Accordingly, the Court finds that Defendant is entitled to summary judgment. Defendant's motion for summary judgment is hereby **GRANTED,** upholding the validity of the arbitration award. This action is **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED.