JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada.

*Número:* O-80-463      *Resuelto:* 4 de enero de 1982

*Luis B. Osorio Díaz, César A. Vélez Miranda, Juan Antonio Navarro* e *Irma Rodríguez Justiniano,* abogados de la peticionaria; *Sarah Torres Peralta, José F. Irizarry González* y *José R. Cobián Tormos,* abogados de la demandada.

PER CURIAM: Este caso plantea una fase del importante problema de la arbitrabilidad procesal.

El señor Rubén Darío Peña, miembro de la Unión de Trabajadores de la Industria Eléctrica y Riego, reclamó el pago de dietas por razón de traslado. La sumisión a arbitraje dispuso:

> Que el árbitro determine si la querella del señor Rubén Darío Peña es arbitrable o no. De determinar que es arbitrable resolverá si el querellante tiene derecho al pago de dietas durante el período comprendido entre el 31 de octubre de 1976 y el 17 de diciembre de 1976, de conformidad con los Artículos IX y XXXV del convenio colectivo vigente.

El árbitro declaró sin lugar los planteamientos sobre arbitrabilidad efectuados por la Autoridad y resolvió que "El planteamiento que hace la Unión en este caso de que la querella debe adjudicarse a su favor por cuanto la Autoridad no cumplió con los límites de tiempo establecidos en la Sección 5B del Artículo XXXIX se declaran [*sic*]

con lugar. La Autoridad deberá pagar al querellante Rubén Darío Peña las dietas que reclama en esta querella".

La Autoridad incumplió el laudo y la Junta de Relaciones del Trabajo nos ha solicitado que lo pongamos en vigor. La Autoridad se opone a esta solicitud sobre la base de que el árbitro se excedió en su jurisdicción. Alega la Autoridad que de la sumisión acordada por las partes no surge como cuestión a resolver por el árbitro, si la Autoridad cumplió con los términos de tiempo para contestar las querellas. La Autoridad acepta que no contestó a tiempo, en el segundo nivel de responsabilidad, la querella en este caso, pero argumenta que la cláusula del convenio que fija esta responsabilidad "es nula y contraria al orden público, ya que hay ausencia de una sumisión, de un laudo de arbitraje y de consideración por el árbitro de los méritos de las quejas en su fondo".

La Sec. 5B del Art. XXXIX del convenio entre las partes provee, en parte, que "el Jefe o Jefe Auxiliar de la División, según sea el caso, deberá emitir su decisión por escrito dentro de los próximos cinco (5) días laborables a partir de la terminación de la vista. . .". El convenio especifica la consecuencia de incumplir, como ocurrió aquí, esta disposición. La propia sección citada ordena:

El Jefe o Jefe Auxiliar de la División, según sea el caso, emitirá su decisión por escrito dentro del término establecido y de no hacerlo, la querella se considerará resuelta a favor del trabajador.

¿Contraría el orden público esta cláusula, según alega la Autoridad? Resolvemos que no. Las partes están libres para acordar un procedimiento ordenado para la solución de las controversias que puedan surgir entre ellas. El convenio no ofende el orden público al requerir la observancia estricta de tal procedimiento como condición previa a la emisión de un laudo. La doctrina y la jurisprudencia generalmente reconocen la eficacia de este género de solución automática de disputas. F. y E. A. Elkouri,

*How Arbitration Works*, 3ra ed., Washington, The Bureau of National Affairs, 1973, págs. 154, 159–162.

■ La Autoridad alega que estas cláusulas de género automático desnaturalizan el procedimiento de arbitraje, que resulta indispensable que en alguna etapa la controversia se considere en sus méritos, a menos que por acuerdo de las partes se pueda resolver informalmente entre ellas. Del otro lado, contribuye a la paz laboral que el procedimiento libremente adoptado por las partes se observe cuidadosamente, excepto en circunstancias singulares que no se dan aquí. En Puerto Rico no hemos vacilado en señalar que no puede hacerse impunemente caso omiso del procedimiento de arbitraje prescrito en el convenio. *Buena Vista Dairy, Inc.* v. *J.R.T.*, 94 D.P.R. 624, 631–633 (1967). *Cf. J.R.T.* v. *A.C.A.A.*, 107 D.P.R. 84 (1978); *San Juan Mercantile Corp.* v. *J.R.T.*, 104 D.P.R. 86 (1975).

¿Tenía autoridad el árbitro, no obstante, para expresar juicio sobre la aplicación y el efecto en este caso de la cláusula automática? Para examinar esta cuestión hay que escudriñar el ámbito de la cláusula de arbitraje acordada por las partes.

■ La Sec. 1 del Art. XXXIX del convenio expone:

> Todas las controversias, quejas y querellas basadas en las disposiciones de este convenio serán de la competencia de los organismos creados en este Artículo y de los organismos creados por ley.

El Art. XXXIX del convenio, como hemos visto, es el que establece el mecanismo de arbitraje. En *Pérez* v. *Autoridad Fuentes Fluviales*, 87 D.P.R. 118, 129 (1963), citamos con aprobación lo dicho en *Steelworkers* v. *Warrior & Gulf Co.*, 363 U.S. 574, 581 (1960):

> . . . excepto los asuntos que las partes específicamente excluyen del procedimiento de querellas y arbitraje pactado en el convenio colectivo, todas las controversias entre ellas

caen dentro de dicho procedimiento. Ese procedimiento es, en otras palabras, parte y continuación de la negociación colectiva.

La cláusula de arbitraje citada es abarcadora. Las partes no excluyeron de su alcance la cuestión referente a la arbitrabilidad procesal. El árbitro no excedió su jurisdicción al determinar la aplicación o no, en este caso, de la cláusula automática.

En Estados Unidos se ha señalado la inconveniencia e indeseabilidad de reservar los asuntos "procesales" para las cortes y los "sustantivos" para los árbitros. Los dos conceptos están entrelazados demasiado íntimamente. Si la fase sustantiva de una disputa es arbitrable, la regla general es que las cuestiones procesales relacionadas con ella se resuelvan también por el árbitro. *John Wiley & Sons* v. *Livingston*, 376 U.S 543, 557–559 (1964). Aun en situaciones en que la disputa ha surgido después de la expiración de un convenio, se ha ordenado utilizar el mecanismo de arbitraje extinto por causa de la amplitud de la antigua cláusula. *Nolde Bros., Inc.* v. *Bakery Workers*, 430 U.S. 243 (1977).

Dadas las conclusiones a que hemos llegado sobre las cuestiones discutidas, es innecesario que nos expresemos sobre otros planteamientos efectuados en este caso. *Por las razones expuestas se expedirá el auto y se ordenará que se ponga en vigor el laudo emitido.*