López Feliciano, Jueza Ponente
TEXTO COMPLETO DE LA RESOLUCIÓN
Waste Management de Puerto Rico nos solicita que revoquemos la sentencia dictada por la Sala Superior de San Juan del Tribunal de Primera Instancia (T.P.I.) el 28 de julio de 2004 y notificada a las partes el 12 de agosto siguiente. Mediante dicha sentencia, el T;P.I. confirmó el laudo de arbitraje impugnado, concluyendo que el mismo se emitió conforme al derecho aplicable.
Aunque la parte peticionaria, o patrono peticionario, titula su escrito como uno de “apelación”, a tenor con la Regla 32(D) del Reglamento del Tribunal de Apelaciones, por tratarse de la revisión de una sentencia final del T. P.I. dictada al revisar un laudo de arbitraje, consideramos el recurso como uno de certiorari.
Habiendo transcurrido el término reglamentario para que la parte recurrida presentara su alegato en oposición, si alguno, sin que lo haya hecho, estamos en condiciones de disponer del presente recurso, lo que a continuación hacemos.
I
Hechos e Incidentes Procesales
Como en su escrito la parte peticionaria sostiene que “NO está cuestionando las determinaciones de hechos del árbitro, únicamente su decisión, pues precisamente dichas Determinaciones de Hechos es que apoyan (sic) las alegaciones del apelante en cuanto a que el laudo no fue emitido conforme a derecho,” procedemos a incorporar aquí los hechos concluidos por el árbitro en cuestión. Dictaminó el árbitro que:

“El 30 de abril de 1999, Waste Management le anunció a los empleados de Peñuelas que efectivo el 3 de mayo de 1999, se estaría dando servicio a ciertas rutas mayormente en el área metropolitana y áreas limítrofes desde las facilidades en Humacao, durante los próximos 90 días. En ese momento se continuó dando servicio a unos clientes en Peñuelas desde las facilidades en ese municipio, aunque había que ir hasta Humacao para disponer de los desperdicios.

*807
En la notificación que se les entregó a los empleados petjudicados el 30 de abril de 1999, se les indicó que tenían que reportarse a trabajar a las facilidades de Humacao, a las 5:00 de la mañana, y que sería allí donde registrarían su asistencia. Además, se les indicó que la Compañía les proveería transportación desde Peñuelas hasta Humacao. Se aclaró que el uso de guagua no significaba que tenían que reportarse a trabajar a las facilidades de Peñuelas. Asimismo, se aclaró que aquel empleado que quisiera utilizar su propio vehículo para transportarse hasta Humacao, así lo podía hacer.

A partir del 12 de julio de 1999, cuando ya estaba en operación el nuevo vertedero, la Compañía comenzó nuevamente a dar servicio a las ‘rutas en el área metropolitana y áreas limítrofes’ desde las facilidades en Peñuelas; por lo que los empleados volvieron a registrar su asistencia en Peñuelas.”

Fundamentándose en los hechos antes expuestos y considerando lo que estimó era el derecho aplicable a los mismos, el 4 de junio de 2001, un árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos emitió laudo decidiendo que “[e]l tiempo de viaje de Peñuelas a Humacao debe ser compensado como tiempo trabajado...”.
Inconforme con el laudo, el 5 de julio de 2001, la aquí parte peticionaria presentó una petición de revisión ante el T.P.I., según dispuesto en el Artículo 5.003(2) (4) dé la Ley de la Judicatura de 1994. Allí solicitó que se dejara sin efecto el laudo impugnado.
Ante el T.P.I., la peticionaria imputó error al árbitro en su decisión y alegó que el laudo no se había emitido conforme al derecho aplicable y que no representaba el balance más racional, justiciero y jurídico de la prueba. La aquí parte recurrida oportunamente presentó su oposición, alegando que la determinación del árbitro había sido correcta y conforme a derecho. Luego de dar oportunidad a las partes de exponer sus puntos de vista en una vista señalada a esos efectos, el 28 de julio de 2004, el T.P.I. dictó la sentencia de la cual se recurre ante este foro apelativo.
II
Cuestión Planteada
Debemos resolver, en consideración a los planteamientos que presenta la parte peticionaria, si actuó correctamente el T.P.I. al concluir que el laudo de arbitraje impugnado se dictó correctamente al dictaminar que procedía compensar a los empleados unionados de la parte recurrida por el tiempo de viaje invertido por éstos al trasladarse, con carácter provisional o temporero y por exigencias del patrono, fuera de su área normal o regular de trabajo a otra área de trabajo.
III
Análisis de la Cuestión Planteada y Conclusiones de Derecho
A
Revisión Judicial de un Laudo de Arbitraje
Vuelve a la consideración de este tribunal apelativo otro caso de arbitraje obrero-patronal, fundamentado en un convenio de negociación colectiva. Sobre el tema es claro que en nuestra jurisdicción la negociación colectiva en el ámbito laboral persigue el mantenimiento de la paz industrial mediante el establecimiento de mecanismos que fomenten la solución pacífica de las controversias obrero-patronales. Véase Artículo 1 de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. see. 62.
Al considerar los mecanismos para la solución de disputas obrero-patronales, nuestro Tribunal Supremo ha sostenido que cuando un convenio colectivo contiene disposiciones para el procesamiento de quejas y agravios, y *808 para su eventual ventilación a través del proceso de arbitraje, éste debe cumplirse estrictamente. Corporación PR Difusión Pública v. U.G.T., 156 D.P.R. _ (2002); 2002 J.T.S. 60; Vélez v. Servicios Legales de Puerto Rico, Inc., 144 D.P.R. 673 (1998); Martínez Rodríguez v. A.E.E., 133 D.P.R. 986 (1993); Hermandad Unión de Empleados v. F.S.E., 111 D.P.R. 51 (1982); J.R.T. v. A.F.F., 111 D.P.R. 837 (1982); San Juan Mercantile Corp. v. J.R.T., 104 D.P.R. 86 (1975); Beaunit of Puerto Rico v. J.R.T., 93 D.P.R. 509 (1966).
El alcance de la revisión judicial de un laudo de arbitraje ha sido ampliamente definido por nuestra jurisprudencia. Existe una vigorosa política pública a favor del arbitraje obrero-patronal. Corporación PR Difusión Pública v. U.G.T., supra; Vélez v. Servicios Legales de Puerto Rico, Inc.4 supra; UCPR v. Triangle Engineering Co., 136 D.P.R. 133 (1994); World Films, Inc. v. Paramount Piet. Corp., 125 D.P.R. 352 (1990). Se considera el arbitraje como el medio más adecuado para la solución de los conflictos obrero-patronales, por considerarse un mecanismo menos técnico, menos oneroso y más flexible. Martínez Rodríguez v. A.E.E., supra; UIL de Ponce v. Dst. Serrallés, Inc., 116 D.P.R. 348 (1985); SIU de PR v. Otis Elevator Co., 105 D.P.R. 832 (1977); Pérez v. A.F.F., supra.
Se ha sostenido que como regla general ante un convenio voluntario de arbitraje lo prudente es la abstención judicial. UCPR v. Triangle Engineering Co., supra; JRP v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62 (1987). Sin embargo, “la intervención judicial no está vedada, pero si autolimitada.... La revisión de los laudos de arbitraje se circunscribe a la determinación de la existencia defraude, conducta impropia, falta de ley o proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelve todos los asuntos en controversia. ” Corporación PR Difusión Pública v. U.G.T., supra; Condado Plaza v. Asoc. Emp. Casino PR, 149 D.P.R. 347 (1999); JRT v. Hato Rey Psychiatric Hosp., supra; UIL de Ponce v. Dst. Serrallés, Inc., supra.
No obstante la normativa anterior, se ha enunciado que si el convenio colectivo dispone que los asuntos del arbitraje deberán ser resueltos conforme a derecho, en la revisión judicial los tribunales pueden extender su facultad para además de revisar el laudo, también revisar sus méritos jurídicos. Corporación PR Difusión Pública v.U.G.T., supra; UCPR v. Triangle Engineering Co., supra; Sonic Knitting Industries v. ILGW, 106 D.P.R. 557 (1977); JRT v. NY & PR SS Co., 69 D.P.R. 182 (1949).
En la evaluación de si un laudo está conforme a derecho, los tribunales deben asegurarse que el árbitro no haya ignorado las normas de derecho sustantivo en el campo del derecho laboral. Corporación PR Difusión Pública v. U.G.T., supra; Condado Plaza v. Asoc. Emp. Casino PR, supra; JRT v. Hato Rey Psychiatric Hosp., supra; Sonic Knitting Industries v. ILGW, supra.
Finalmente, para los tribunales revisores de un laudo de arbitraje, la revisión es análoga a la revisión judicial de las decisiones de las agencias administrativas. Corporación PR Difusión Pública v. U.G.T., supra; Rivera v. Dir. Adm. Trib., 144 D.P.R. 808 (1998); UGT v. Challenger Caribbean Corp., 126 D.P.R. 22 (1990); UIL de Ponce v. Dst. Serrallés, Inc., supra.
B
Tiempo Trabajado bajo la Ley Federal de Normas Razonables del Trabajo
Son de aplicación a la controversia de autos disposiciones estatutarias y reglamentarias federales sobre lo que se considera “tiempo trabajado” por un empleado. En 1947, el Congreso de los Estados Unidos aprobó legislación donde se trataba en especial dicho concepto. La Ley conocida como “Portal-To-Portal Act”, introdujo cambios o modificaciones sobre el particular. Uno de los propósitos de esta legislación fue “establecer de forma más específica y restrictiva lo que se considera tiempo trabajado por un empleado y, por lo tanto-compensable al amparo de la ley.” 
Conforme a dicha legislación federal, como norma general, un patrono no tiene que pagar compensación a un *809 empleado por las siguientes actividades:

“1) Caminar y/o viajar hacia y desde el lugar en que realiza las funciones de su empleo.

2) Actividades preliminares o posteriores a la principal actividad del trabajo 
Sin embargo, la ley federal aludida estableció ciertas excepciones en las actividades del empleado ante las cuales el patrono tiene que compensar las mismas como tiempo trabajado. En esencia, estas excepciones son las siguientes:

“1) La disposición expresa de un acuerdo escrito o verbal entre el empleado, su agente o el representante en la negociación colectiva y el patrono, el cual esté en vigor al momento de realizarse la actividad.

2) Una norma o práctica de la empresa que esté en vigor cuando se realiza la actividad.” 

Conforme a los hechos concluidos por el árbitro, aceptados por el patrono aquí peticionario en su escrito ante este foro y también aceptados por el T.P.I., los empleados afectados tenían como sede regular o normal de trabajo ciertas facilidades ubicadas en Peñuelas, donde registraban su asistencia y desde donde prestaban servicios a rutas en el área metropolitana y áreas limítrofes. El 30 de abril de 1999, el patrono peticionario requirió de dichos empleados que a partir del 3 de mayo siguiente las rutas en el área metropolitana y áreas limítrofes se atenderían desde facilidades ubicadas en Humacao, donde registrarían su asistencia. De los hechos concluidos se deduce que una vez en operación un nuevo vertedero en Peñuelas, a partir del 12 de julio de 1999, el servicio a rutas en el área metropolitana y áreas limítrofes se continuó ofreciendo desde Peñuelas. 
Veamos cómo incide sobre estos hechos la reglamentación federal pertinente a los mismos.
C
La Reglamentación Federal
Para poner en vigor la citada “Portal-To-Portal Act”, el Departamento del Trabajo Federal ha promulgado una serie de reglas o normas, dirigidas, por un lado, a evitar que los patronos tengan enriquecimiento injusto con el trabajo no compensado de los empleados, y por otro lado, que los empleados reciban una justa compensación por el tiempo trabajado.
El llamado “Code of Federal Regulations” (CFR), en lo pertinente a qué horas se consideran como trabajadas, 29 CFR sec. 785.1 et seq., tiene varias reglas relevantes al asunto que fue sometido al arbitraje bajo cuestionamiento. A continuación exponemos las mismas:

“§785.33 General

The principles, which apply in determining whether or not time spent in travel is working time, depend upon the kind of travel involved. The subject is discussed in §§785.35 to 785.41, which are preceded by a brief discussion in §785.34 of the Portal-to-Portal Act as it applies to travel time. ”

“§785.34 Effect of section 4 of the Portal-to Portal Act.

The Portal Act provides in section 4(a) that except as provided in subsection (b) no employer shall be liable for the failure to pay the minimum wage or overtime compensation for time spent in ‘walking, riding, or traveling to an form the actual place of performance of the principal activity or activities which such employee is employed to perform either prior to the time on any particular workday at which such employee 
*810
commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.’ Subsection (b) provides that the employer shall not be relieved from liability if the activity is compensable bv express contract or bv custom or practice not inconsistent with an express contract. Thus travel time at the commencement or cessation of the workday which was originally considered as working time under the Fair Labor Standards Act (such as underground travel in mines or walking from time clock to work-bench) need not be counted as working time unless it is compensable by contract, custom or practice. If compensable by express contract or by custom or practice not inconsistent with an express contract, such travel time must be counted in computing hours worked. However, ordinary travel from home to work (see §785.35) need not be counted as hours worked even if the employer agrees to pay for it....”.

§785.35 Home to work; ordinary situation

An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not work time.”

“§785.36Home to work in emergency situations.

There max be instance when travel from home to work is overtime. For example, if a employee who has gone home after completing his day’s work is subsequently called out at night to travel a substantial distance to perform an emergency job for one of his employer’s customers all time spent on such travel is working time. The Divisions are taking no position oh whether travel to the job and back home by an employee who receives an emergency call outside of his regular hours to report back to his regular place of business to do a job is working time.”

§785.37 Home to work on special one-day assignment in another city.

A problem arises when an employee who resularlv works at a fixed location in one city is eiven a special 1-dav work assignment in another citv. For example, an employee who works in Washington, D.C., with regular working hours from 9 a.m. to 5 p.m. may be given a special assignment in New York City, with instructions to leave Washington at 8 a.m. He arrives in New York at 12 noon, ready for work. The special assignment is completed at 3 p.m., and the employee arrives back in Washington at 7p.m. Such travel cannot be regarded as ordinary home-to work travel occasioned merely bv the fact of employment. It was performed for the employer’s benefit and at his special request to meet the needs of the particular and unusual assienment It would thus qualify as an integral part of the ‘principal’ activity, which the employee was hired to perform on the workday in question; it is tike travel involved in an emergency call (described in §785.36), or like travel that is all in the days work (see §785,38). All the time involved, however, need not be counted. Since, except for the special assignment, the employee would have had to report to his regular work site, the travel between his home and the railroad depot may be deducted, it being in the *home-to-work’ category. Also, of course, the usual meal time would be deductible.” (Subrayados nuestros.)
La normativa federal antes transcrita puede contraerse a que los patronos no tienen que compensar a los empleados por su tiempo de viaje normal entre su hogar y el lugar de trabajo. Ahora bien, cuando el tiempo de viaje del hogar al lugar de trabajo no es considerado como él tiempo normal y usual, ya que el patrono exige prestar los servicios en un lugar distante de su trabajo, lo que no forma parte de las condiciones ordinarias y usuales de trabajo, ese tiempo de viaje debe ser compensado como tiempo trabajado.
En Kavanagh v. Grand Union Company, Inc., 1992 F.3d 269, 270-273 (2d Cir. 1999), correctamente citado y aplicado a esta controversia tanto por el árbitro como por el T.P.I., al tratarse el tema de lo que es “tiempo de *811 viaje normal”, el Tribunal de Apelaciones del Segundo Circuito se expresó en los siguientes términos:

“Here, 29 C.F.R. § 785.35 specifically provides that employers are not required to compensate employees for their ‘[njormal traveV between home and work. We interpret ‘normal travel’, as used in this regulation, to refer to the time normally spent by a specific employee traveling to work. The term does to represent an objective standard of how far most workers commute or how far they may reasonably be expected to commute. Instead, it represents a subjective standard, defined by what is usual within the confines of a particular employment relationship. This construction is consistent with the overall regulatory scheme and with the interpretations given by other courts and the Department of Labor (‘DOL’) itself when confronted with similar cases.”

Como bien se señala en el citado caso, el término “viaje normal” no representa un concepto estándar, sino que se trata de algo subjetivo, que se define y precisa a base de lo que es usual en las relaciones del empleado con su patrono frente a lo que no es usual o normal.
En cuanto al concepto de lo que constituye “trabajo”, lós tribunales federales se han expresado que se refiere a lo siguiente:
“...[AJll activities controlled or required by the employer and pursued necessarily and primarily for the benefit of his employer and his business.” Kroll, et al. v. Home Depot USA Inc., 2003 WL 23332905 (S.D. GÁ.); Dade County Fla. v. Alvarez, 124 F.3d. 1380, 1384 (11th. Cir.1997).
D
Análisis y Conclusión
El T.P.I. sobrepuso la normativa anteriormente expuesta a los hechos y a las relaciones entre empleados y el patrono en el caso de autos. Al así hacerlo, en cumplimiento con dicha normativa, no encontró, como tampoco ha detectado este foro apelativo, que en el laudo arbitral impugnado mediara fraude, conducta impropia, falta de ley o de proceso de ley, violación a política pública, falta de jurisdicción o que con el mismo no se resolvieran todos los asuntos en controversia. Por el contrario, determinó que el laudo se ajustaba conforme al derecho laboral aplicable. Correctamente, el T.P.I. concluyó que el árbitro había tomado adecuadamente en cuenta, al enfrentarse a la controversia planteada, las normas de derecho sustantivo aplicables al asunto. Véase Corporación PR Difusión Pública v. U.G.T., supra; Condado Plaza v. Asoc. Emp. Casino PR, supra; JRT v. Hato Rey Psychiatric Hosp., supra; UIL de Ponce v. Dst. Serrallés, Inc., supra.
La parte peticionaria plantea en esta instancia revisora que es.de aplicación a los hechos del caso lo dispuesto en 29 CFR see. 785.35, supra. Arguye que la situación enmarca dentro de dicha regla. No tiene razón. Las diferencias son evidentes. Así lo concluyó el árbitro y recogió acertadamente en su sentencia el T.P. I.
Para que se exima a un patrono de pagar el tiempo de viaje de un empleado de su hogar al lugar de trabajo se tienen que dar las siguientes invariables: (1) que se trate de un día normal o usual de trabajo (“regular work day”)’, (2) que el tiempo de viaje de su hogar al lugar de trabajo sea uno ordinario o usual (“ordinary home to work travel”)-, y (3) que dicho tiempo de viaje sea un incidente normal del empleo (“a normal incident of employment). Esta no es la situación en el presente caso.
Aquí no se trató de un día regular de trabajo, ya que los empleados cuya sede de trabajo era en Peñuelas tenían que reportarse a trabajar en Humacao; por lo que el tiempo de viaje no era lo ordinario ni usual; y tampoco se trató de un incidente normal del empleó.
*812 Considerando toda esta normativa, no nos persuade la afirmación de la parte peticionaria de que como su negocio abarca toda la isla de Puerto Rico, sus empleados prestan servicios a través de toda la isla. Si aceptáramos esta premisa, como no la aceptó el árbitro ni tampoco el T.P.I., estaríamos convalidando que se le niegue al empleado la justa compensación que merece por tiempo trabajado. En las relaciones obrero-patronales, particularmente en lo concerniente a jomada de trabajo, horas y salarios, las reglas tienen que ser claras y no pueden dejarse al arbitrio interpretativo de una parte.
No hemos encontrado fundamento o mérito jurídico alguno que justifique que el foro judicial intervenga en el laudo de arbitraje aquí bajo escrutinio.
IV
Disposición del Recurso
Por los fundamentos antes expuestos, se deniega la expedición del auto solicitado.
Notifíquese.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIOS 2005 DTA 18
1. Escrito de “Apelación” de la parte peticionaria, pág. 14.
2. Véase Apéndice de la peticionaria, págs. 3-4. ■
3.29 U.S.C.A. sees. 251-262.
4. Acevedo Colóm, Alberto, Legislación Protectora del Trabajo Comentada, 5ta. edición revisada, 1997, pág. 126.
5. Ob. cit., pág. 127.
6. Ibid.
7. En sus determinaciones de hechos, el árbitro hace hincapié en que entre el 3 de mayo y 12 de julio de 1999, el patrono peticionario continuó dando servicios a unos clientes en Peñuelas desde las facilidades en ese municipio, aunque había que ir hasta Humacao para disponer de los desperdicios.
8. Se refiere a la llamada regla sobre “home to work; ordinary situation”.
9. Conforme a la antes citad sección 785.35 del 29 CFR.
10. A base de la tabla de la Autoridad de Carreteras de Puerto Rico, indicando distancia entre pueblos, del 31 de marzo de 1989, tomamos conocimiento judicial que de Peñuelas a Humacao, por carretera, hay una distancia de aproximadamente 82 millas; que bajo condiciones normales puede tomar en automóvil alrededor de hora y media de viaje, o un poco más, en una sola dirección.