# 2008 DTA 66

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL II**

CORPORACIÓN FONDO DEL SEGURO DEL ESTADO
Peticionaria

v.

UNIÓN EMPLEADOS CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO
Recurrida

Núm. KLCE-2007-01884

San Juan, Puerto Rico, a 30 de abril de 2008

Panel integrado por su Presidenta, la Juez García García,
la Juez Varona Méndez y el Juez Cabán García

Varona Méndez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La Corporación del Fondo del Seguro del Estado (el Fondo) recurre de una sentencia dictada por el Tribunal de Primera Instancia, mediante la cual confirmó un laudo de arbitraje dictado por el Comité de Querellas constituido en virtud del convenio colectivo suscrito entre el Fondo y la Unión de Empleados del Fondo del Seguro del Estado (Unión). Por los argumentos que habremos de discutir, expedimos el auto solicitado y confirmamos la sentencia recurrida.

## I

A continuación hacemos un recuento del trasfondo procesal y fáctico del caso, según fueron consignados en el laudo objeto de discusión en el caso.

El 7 de marzo de 2001, la Unión presentó una querella en la que cuestionó la determinación del Fondo de suspender de empleo y sueldo al empleado Jorge L. Rivera Aponte por un período de 30 días laborables. La intención de suspensión respondía a una investigación que apuntaba a un patrón de ausencias por parte del Sr. Rivera Aponte, quien para esa fecha ocupaba un puesto de Oficinista III en la Sección de Archivo de Expedientes Médicos, adscrito a la Oficina Regional de Aguadilla.

El 8 de agosto de 2001, la Unión presentó otra querella en la que cuestionó otra determinación del Fondo, de suspender de empleo y sueldo al Sr. Jorge Rivera Aponte, por un término de 30 días. El Sr. Rivera Aponte aún ocupaba el puesto de oficinista en la Sección de Archivo de Expedientes Médicos en la Oficina Regional de Aguadilla. Esta acción del Fondo respondió a problemas de asistencia. [1]

El 15 de febrero de 2002, la Unión presentó otra querella, ante la determinación del Fondo de destituir al Sr. Rivera Aponte, quien permanecía en su puesto. Esta vez se alegaba un reiterado patrón de ausencias y tardanzas, el cual reflejaba que desde el mes de agosto de 2001 hasta el 15 de diciembre de 2001, se había ausentado en 18 ocasiones con cargo a licencia por enfermedad y había llegado tarde en 57 ocasiones.

El 21 de marzo de 2003 se celebró una vista en torno a las querellas presentadas. Las partes solicitaron tiempo para dialogar para conciliar o transigir los casos señalados, lo cual fue concedido. Al reanudar la vista, las partes informaron que habían llegado a un acuerdo transaccional. A tenor de éste, el Sr. Rivera Aponte admitió haber incurrido en la conducta imputada y lo atribuyó a problemas familiares y al hecho de residir en Bayamón, pese a trabajar en Aguadilla. Se acordó que el Sr. Rivera Aponte se acogería a una suspensión de empleo y sueldo de 10 días laborables, a partir del martes, 1ro. de abril de 2003. Además, se comprometió a mantener buena conducta y a no incurrir en problemas de ausentismo y tardanzas por el término de un año. Transcurrido dicho término, se removerían de su expediente de personal todas las cartas que dieron lugar a las formulaciones de cargos y sus correspondientes querellas. No obstante, de incurrir en conducta similar, es decir, de persistir en cualquier patrón de ausentismo y tardanzas, se procedería a reabrir todos los casos, conforme a los hechos alegados en cada una de las querellas.

El querellante fue llamado a ratificar el acuerdo y se comprometió a cumplir con los términos de este. En

virtud de ello, se sometió el acuerdo para solicitar su aprobación y que se dejaran en suspenso las querellas hasta que el querellante cumpliera a con lo acordado.

No obstante ello, el 6 de febrero de 2006, el Fondo informó que el Sr. Rivera Aponte había incumplido los acuerdos estipulados. Así pues, el 7 de abril de 2006, se celebró vista para discutir el caso, a la que comparecieron las partes.

En la vista, el Fondo presentó como prueba el récord electrónico de ausencias del Sr. Rivera Aponte del 28 de marzo de 2003 al 27 de marzo de 2004; se solicitó que se tomara conocimiento oficial de la resolución dictada el 28 de marzo de 2003 por el Comité de Querellas. Las partes sometieron además el convenio colectivo vigente.

El 18 de octubre de 2006, el Comité de Querellas dictó la resolución recurrida, en torno a la moción sometida por el Fondo, sobre incumplimiento de las estipulaciones. Tras evaluar lo alegado y la prueba sometida, el Comité de Querellas el Comité determinó que del récord sometido por el Fondo, se desprendía que durante el período de prueba de un año acordado por las partes, éste se había ausentado 14 veces e incurrido en 33 tardanzas. No obstante, sostuvo que el Fondo no había presentado pruebas de ausencias o tardanzas luego del período probatorio, sino que había solicitado la reapertura de las querellas por violación a los términos de la resolución de 28 de marzo de 2003. Dicha solicitud fue sometida por el Fondo el 15 de febrero de 2006, cuando ya el Comité de Querellas había notificado al Director del Área de Relaciones Laborales que el querellante había cumplido con el período probatorio el 1ro. de abril de 2004 y que *de existir alguna causa relacionada con el comportamiento del empleado, debería considerarse como un caso nuevo*. [2]

En su resolución, el Comité de Querellas dispuso, además, que el Fondo había incurrido en una demora injustificada al solicitar la reapertura de los casos, sin que se hubiesen presentado razones para acreditar dicha tardanza. Según sostuvo, el Fondo estaba obligado por las disposiciones del Convenio Colectivo, Artículo 6A, que dispone el mecanismo para notificar al empleado afectado cualquier determinación disciplinaria y un término de treinta días para ello. Expresó que el Fondo venía obligado a promover la solicitud de reapertura de las querellas en el plazo acordado y contemplado por el Artículo 6ª-1 del Convenio; es decir, no más tarde de 30 días de la fecha en que los supervisores tuvieron conocimiento de los hechos. Concluyó que el término de 30 días para la notificación es de cumplimiento estricto y que, aun cuando el caso no versa sobre una nueva acción disciplinaria impuesta por el patrono, es claro que dicha solicitud persigue su destitución, por lo cual la notificación de la intención estaba regida por dicho término. Adujo que lo contrario *sería permitirle a la Corporación actuar de manera ilimitada, manteniendo al empleado sujeto a la reapertura de los casos indefinidamente*.

En virtud de los fundamentos expresados por el Comité de Querellas, se declaró sin lugar la solicitud de reapertura y de destitución del Sr. Rivera Aponte.

Inconforme, el Fondo recurrió ante el Tribunal de Primera Instancia, para cuestionar la determinación del Comité de Querellas. Tras revisar los argumentos presentados por las partes, el foro primario confirmó la determinación del Comité de Querellas.

Ante nos, el Fondo señala que erró el Tribunal de Primera Instancia al sostener un laudo en el que el Comité de Querellas carecía de jurisdicción y al aplicar el Artículo 6 del Convenio Colectivo a la reapertura de un caso disciplinario; al sostener al Comité de Querellas y no permitir la reapertura del caso, pese a no haber cumplido el Sr. Rivera Aponte con lo acordado y al sostener al Comité de Querellas al tomar en consideración un memorando preparado por el anterior presidente del Comité, cuyo contenido es incorrecto.

Con el beneficio de la comparecencia de las partes y el Derecho aplicable, resolvemos.

## II

En virtud de la Ley Núm. 83 de 29 de octubre de 1992 se enmendó la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Número 45 de 18 de abril de 1935, y se creó la Corporación del Fondo del Seguro del Estado, que funciona como una empresa privada. 11 L.P.R.A. Sec. 1b. Así, en virtud del Art. II de la Sec. 17 de la Constitución del Estado Libre Asociado de Puerto Rico, sus empleados adquirieron el derecho a organizarse y a negociar colectivamente por virtud de su propia y libre selección. *C.R.I.M. v. Fed. Central de Trabajadores,* 1242 D.P.R. 9068 (1997).

Igualmente, la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. § 61 *et seq.*, les reconoce el derecho a la negociación colectiva. En su Artículo 1, dicha Ley declara que:

"*a. ...es a través de la negociación colectiva el medio como deberán fijarse los términos y condiciones de empleo.*

*b. Es la política del Gobierno eliminar las causas de ciertas dispuestas obreras, fomentando las prácticas y procedimientos de la negociación colectiva...*

*c. ... en el ejercicio de los derechos reconocidos a las partes en dichos convenios, como también en cumplimiento de las obligaciones que de ellos derivan, se atendrá la norma de una razonable reglamentación para lograr las normas contenidas en dicha ley.*"

Constituye un interés apremiante del Estado regular las relaciones obrero-patronales y proteger los derechos de los trabajadores. *Rivera v. Pan Pepín, Inc.,* **2004 J.T.S. 68**, 161 D.P.R. \_\_\_\_ (2004). Es por ello que esa área se encuentra ampliamente reglamentada por un esquema legislativo que persigue salvaguardar los derechos constitucionales concedidos a los trabajadores. *Vega y otros v. Caribe G.E. Products, Inc.,* **2003 J.T.S. 175**, 160 D.P.R. \_\_\_\_ (2003).

En virtud de lo anterior, el convenio colectivo es un instrumento de prioritaria importancia para la negociación colectiva en el campo laboral. *U.I.L. de Ponce v. Dest. Serrallés, Inc.,* 116 D.P.R. 348 (1985). Éste ha sido revestido de un alto interés público, pues representa el medio idóneo para alcanzar la armonía y estabilidad en las relaciones obrero-patronales. Además, el convenio colectivo proporciona a los empleados y al patrono mecanismos para la sana solución de discrepancias y desavenencias que puedan surgir entre ellos. *U.I. L. de Ponce v. Dest. Serrallés, Inc., supra.* Se trata de un contrato que posee fuerza de ley entre las partes que lo suscriben y, por tanto, genera la ineludible obligación de cumplir con los términos en él acordados conforme al principio de *pacta sunt servanda. J.R.T. v. Junta Adm. Muelle Mun. de Ponce,* 122 D.P.R. 318 (1988).

Un convenio colectivo es un contrato que como tal tiene fuerza de ley entre las partes. Como en Puerto Rico rige el principio de libertad de contratación, éste es extensivo a la negociación colectiva. Como parte de este principio, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que los mismos no sean contrarios a las leyes a la moral ni al orden público. Artículo 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3372; *Álvarez de Choudens v. Rivera,* 163 D.P.R. \_\_\_ (2005), **2005 J.T.S. 90**; *López Torres v. Gónzalez,* 163 D.P.R. \_\_\_ (2004), **2004 J.T.S. 179**.

También es de aplicación a la negociación colectiva lo dispuesto en el Artículo 1210 de dicho Código, 31 L.P.R.A. sec. 3375, donde se establece que perfeccionado el contrato las partes vienen obligadas no sólo a cumplir con lo expresamente pactado, sino también a asumir todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Esta obligación de cumplir con lo pactado se fundamenta esencialmente en el principio de la buena fe, la cual exige no defraudar la confianza que otros han puesto en una promesa o condición. *Unisys v. Ramallo Brothers,* 128 D.P.R. 842, 852 (1991).

Por otra parte, es norma reiterada en nuestra jurisdicción que la facultad de un tribunal para revisar un laudo de arbitraje es muy limitada. Se respeta así *"la clara política pública a favor del arbitraje como mecanismo para dilucidar las controversias obrero-patronales"*. *J.R.T. v. Corp. Crédito Agrícola*, 124 D.P.R. 846, 849 (1989). Y esto es así porque el arbitraje se destaca como *"mecanismo rápido y menos costoso que los procedimientos judiciales, a la vez que ofrece mayor flexibilidad a las partes"*. *Pérez v. A.F.F.*, 87 D.P.R. 118, 127 (1963).

Ahora bien, aun cuando sea permisible la revisión judicial de un laudo, se ha advertido que los tribunales no deben inclinarse fácilmente a decretar la nulidad de esa decisión, a menos que el laudo deba sujetarse a derecho y el árbitro haga caso omiso de las normas jurídicas aplicables. *Rivera v. Samaritano & Co.*, 108 D.P.R. 604, 609 (1979); *J.R.T. v. A.F.F.*, 111 D.P.R. 837, 840 (1982), seguidos en *UGT v. Corp. de P.R. para la Difusión Pública*, res. el 23 de agosto de 2006, 168 D.P.R.___(2006), **2006 J.T.S. 143**, a la pág. 80.

Así, en nuestra jurisdicción, los únicos motivos por los cuales puede impugnarse un laudo se reducen a: (1) fraude, (2) conducta impropia, (3) falta de debido procedimiento en la celebración de la vista, (4) violación de la política pública, (5) falta de jurisdicción, o (6) que el laudo no resuelva todas las cuestiones que se sometieron. (Énfasis nuestro.) *J.R.T. v. N.Y. & P.R. S/S Co.*, 69 D.P.R. 782, 800 (1949), reiterado hasta el presente en *C.F.S.E. v. Unión de Médicos de C.F.S.E.*, res. el 6 de marzo de 2007, 170 D.P.R.___ (2007), **2007 J.T.S. 40**.

Sobre el asunto jurisdiccional, cabe destacar que *"cuando la controversia que se suscita se relaciona con el procedimiento o mecanismo establecido en el convenio para atender un agravio o controversia, nos encontramos ante un asunto de arbitrabilidad procesal"*. La cuestión típica de arbitrabilidad procesal es si el agravio se presentó dentro del término provisto en el convenio colectivo y tales asuntos de arbitrabilidad procesal son de la exclusiva inherencia del árbitro. Es decir, aunque *"generalmente, el incumplimiento con los términos y el procedimiento establecido en el convenio conlleva la desestimación de la querella en cumplimiento con la norma que pretende tramitar las querellas con celeridad y diligentemente"*, la determinación de si una queja o controversia se presentó a tiempo según los términos del convenio colectivo es de la inherencia del árbitro como lo es *"cualquier defensa o asunto colateral relacionado o que incida precisamente con ese planteamiento"*. *UGT v. Corp. de P.R. para la Difusión Pública*, **2006 J.T.S. 143**, a las págs. 81-82. Véase la doctrina sentada en *J.R.T. v. A.F.F.*, 111 D.P.R. 837, 841 (1982), que sigue los delineamientos de *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964), y a Demetrio Fernández, *El arbitraje obrero-patronal*. 377 (Forum 2000).

## III

El Artículo 6C del Convenio Colectivo entre las partes creó un Comité de Querellas cuya encomienda era considerar y resolver cualquier controversia, disputa o diferencia que surgiera entre la Corporación, la Unión y/o el empleado en relación a la aplicación e interpretación del Convenio. El Comité consiste de dos representantes de cada una de las partes contratantes y una persona particular quien actúa como su Presidente.

En el caso ante nuestra consideración, el Fondo plantea que el Tribunal de Primera Instancia erró al sostener la determinación de la mayoría del Comité de Querellas, al aplicar el Artículo 6 del Convenio Colectivo y el término de 30 días para la notificación de los cargos a la controversia. Sostiene que dicho término no es de aplicación ya que se trató de una petición de reapertura de los casos. A tenor, arguye que el Comité de Querellas actuó sin jurisdicción y abusó de su discreción.

La dificultad mayor que tiene el reclamo del Fondo es que no ha presentado defensas meritorias que induzcan a este foro a pensar que la decisión recurrida pudo ser distinta a la que es objeto de *certiorari*. Como cuestión de fondo, los tribunales tenemos que mostrar deferencia a los laudos, por la importante política pública prevaleciente en torno al arbitraje obrero-patronal. Ya hemos reseñado que la arbitrabilidad procesal es una de las cuestiones que el árbitro debe resolver con prioridad y su determinación está cubierta por esa extensa

deferencia judicial a la que hemos aludido. Nos encontramos ante un asunto de arbitrabilidad procesal cuando la controversia que se suscita se relaciona con el procedimiento o el mecanismo establecido en el convenio para atender un agravio o controversia. Si una parte impugna la autoridad del árbitro para entrar a considerar y resolver una controversia, tal asunto debe dilucidarse antes de entrar en los méritos del asunto, pues puede plantearse luego su falta de jurisdicción. Tales asuntos de arbitrabilidad procesal requieren ser dilucidados por el árbitro. *J.R.T. v. A.E.E.*, 113 D.P.R. 564, 567 (1982). Debido a su presunta competencia especializada, son los árbitros los llamados a determinar si los agravios fueron procesados en los términos prescritos por el convenio, y de determinar que se desatendieron los términos, deberán razonar que el agravio no es arbitrable procesalmente. D. Fernández Quiñones, *El Arbitraje Obrero-Patronal*, 377 (Forum 2000).

Si las partes acuerdan un límite para presentar una querella, no puede sostenerse el derecho a arbitraje si se hace la solicitud fuera de dicho término, ya que sería pasar por alto una condición cualificadora de ese derecho, establecido claramente por las partes. Por ello, se ha sostenido que una parte no viene obligada a levantar su objeción sobre arbitrabilidad procesal previo a la vista de arbitraje, cuando los términos pactados son claros y su cumplimiento se ha exigido en el pasado. *Fairweather's Practice and Procedure in Labor Arbitration*; 3rd. ed, Shoonhoven, *Bureau of National Affairs*, Washington, D.C., 1991, págs. 89-90.

En este caso, el argumento del Fondo en el sentido de que no eran de aplicación los 30 días dispuestos para la notificación de la acción disciplinaria choca con la realidad de que no se estableció ningún otro término para ello en el acuerdo transaccional de marzo de 2003. Más·aún, resulta incuestionable la excesiva demora del Fondo para solicitar la reapertura del caso, al haber esperado casi dos años para presentar una moción *"urgente"* para solicitar señalamiento de vista para atender las alegadas violaciones a lo acordado.

El Fondo aduce que el Comité de Querellas dictó un laudo contrario a derecho, pese a que el laudo debía ser conforme a derecho. Dicho señalamiento va a los méritos del caso. La Unión, por su parte, señala que no procede este cuestionamiento, ya que el Fondo sometió el caso por el expediente. Lo cierto es que el Comité de Querellas, una vez dispuso que el asunto ante su consideración no era procesalmente arbitrable, no entró en los méritos de la controversia.

Respecto al planteamiento de que erró el Comité de Querellas al concluir que el caso no era arbitrable procesalmente, basado en un memorando suscrito por su pasado presidente, pese a que éste no fue sometido por las partes, no encontramos error en ello. Veamos.

Tanto en los procesos administrativos como en los judiciales se permite que el juzgador tome conocimiento oficial o judicial de eventos, procedimientos, prácticas o hechos. Así pues, la Ley Núm. 170 del 12 de agosto de 1988, aplicable a agencias del gobierno permite tomar conocimiento oficial. 3 L.P.R.A. § 2163 (d). Bajo dicho principio, una agencia administrativa puede tomar conocimiento oficial de aquellos hechos de conocimiento general en la jurisdicción, que puedan ser susceptibles de fácil verificación, recurriendo a fuentes cuya veracidad no puede ser razonablemente cuestionada. Además, la agencia administrativa puede tomar conocimiento judicial *"de sus propios récords relacionados con litigios previos interrelacionados entre las mismas partes"*. *J.R.T. v. Club Náutico*, 97 D.P.R. 386, 391 (1969). Se puede tomar conocimiento oficial o judicial a iniciativa propia o a petición de parte. *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 D.P.R. 42 (1993).

Asimismo, la Regla 11 de las de Evidencia, 32 Ap. IV, R. 11, regula lo relativo al conocimiento judicial de hechos adjudicativos, es decir los hechos que están en controversia de acuerdo con las alegaciones de las partes y del derecho sustantivo que rige el asunto. Esta regla permite que se tome conocimiento judicial de dichos hechos, cuando se establece que éstos son de conocimiento general dentro de la jurisdicción territorial o cuando éstos son susceptibles de determinación inmediata y exacta a través de una fuente, cuya exactitud no puede ser cuestionada. En relación con este segundo criterio, se requiere que los hechos adjudicativos satisfagan un elemento de indisputabilidad. Esto es, que sean de fácil y precisa corroboración. El conocimiento judicial se

funda en la economía procesal probatoria, ya que sustituye la presentación de evidencia ante el Tribunal de Primera Instancia sea ésta testifical, documental o de otra índole. Responde a que los hechos, eventos o determinaciones judiciales son de conocimiento público o de conocimiento de las partes. La naturaleza flexible y menos técnica de los procesos arbitrajes son compatibles con la toma de conocimiento oficial, en aquellas circunstancias en que se cumpla con los criterios que se han reconocido a las agencias y tribunales.

En el arbitraje laboral, un laudo emitido con anterioridad en una disputa laboral entre el mismo patrono, la misma unión, respecto al mismo asunto, interpretando la misma disposición del convenio, se considera de gran fuerza persuasiva. O. Fairweather, *Practice and Procedure in Labor Arbitration*, 2$^{da}$ Ed., Washington, D.C., BNA, 1983, p. 573-578. Salvo limitadas excepciones, los árbitros toman conocimiento oficial y consideran laudos anteriores sobre el mismo convenio, parte de éste, hasta que las partes modifiquen el convenio. L.J. Cooper y D.R. Nolan, *Labor Arbitration*, U.S., American Casebook Series, 1994, p. 295.

En este caso, el Comité de Querellas tomó conocimiento oficial de un memorando que estaba dirigido precisamente al Director del Área de Relaciones Laborales del Fondo en relación a este mismo asunto y respecto a la misma controversia. Las acciones previas, los acuerdos y las determinaciones tomadas respecto al Sr. Rivera Aponte, son datos que el árbitro podía dirimir y considerar para articular su decisión final, conforme al derecho aplicable. Ello así, al surgir de las mismas transacciones y eventos que dieron lugar a la presentación de la querella. Por ello, no puede aducir el Fondo que el referido memorando le era desconocido y que el Comité de Querellas no podía tomar conocimiento oficial de su contenido.

Analizados los argumentos de las partes a la luz del derecho aplicable, no hallamos razón que justifique intervenir con la determinación del Comité de Querellas al resolver que la querella no era arbitrable procesalmente. Concluimos, evaluado el laudo a la luz de los criterios para la revisión de éstos, que no incidió el Tribunal de Primera Instancia al confirmar el laudo recurrido. En virtud de ello, expedimos el auto de certiorari solicitado y confirmamos la resolución recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2008 DTA 66

**1.** Esta vez se aducía que el empleado se había ausentado 15 veces con cargo a vacaciones regulares, seis con cargo a licencia por enfermedad. Además, llegó tarde 44 veces.

**2.** De la resolución dictada por el Comité de Querellas el 5 de octubre de 2006, surge que la comunicación fue enviada por el Lcdo. Ariel Acosta Jusino, quien era Presidente del Comité de Querellas, el 1ro. de febrero de 2005.